MAURICE MORIARTY, Respondent, v. SCHWARZS-
CHILD & SULZBERGER COMPANY, Appel-
lant.

Kansas City Court of Appeals, October 5, 1908.

1. **MASTER AND SERVANT: Res Ipsa Loquitur: Defective
Appliances: Burden of Proof.** Where the facts connected
with an accident fail to point to the master's negligence as
its proximate cause, but leaves a reasonable ground for other
causes than such negligence, the maxim *res ipsa loquitur* does
not apply and the burden is on the servant to show that the
defective appliance was the proximate cause, together with
the master's knowledge of the defect.

2. ————: **Working Place: Scienter: Evidence.** Evidence re-
lating to the condition of the floor and the open door of an
elevator used for lowering meat barrels, is reviewed and held
sufficient to send the question of the defective conditions and
the master's knowledge thereof to the jury.

3. ————: **Negligence: Fellow-Servant.** The master's negli-
gence is not excused by the negligence of a fellow-servant
contributing to the injury.

Appeal from Jackson Circuit Court.—*Hon. Henry L.
McCune*, Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmons* for appellant.

(1) Jurors should not be permitted to base their
verdicts on mere conjecture. McCarthy v. Fagin, 42
Mo. App. 606; Murdock v. Brown, 16 Mo. App. 548;
McConey v. Wallace, 22 Mo. App. 377; Peck v. Rail-
road, 31 Mo. App. 123; McGrath v. Transit Co., 197 Mo.
97; Cothron v. Packing Co., 98 Mo. App. 343. (2) Proof
of the existence of a defect in appliances in itself does
not establish a right of recovery. Breen v. Cooperage
Co., 50 Mo. App. 202; Brown v. Lumber Co., 65 Mo.
App. 162; Plefka v. Knapp, 145 Mo. 316. (3) The
evidence fails to show negligence on the part of the

defendant, as charged in the petition. 20 Am. & Eng. Ency. of Law 78; Pleasants v. Railroad, 120 N. C. 402; Pleasants v. Railroad, 61 Am. St. 674; Kappes v. Shoe Co., 116 Mo. App. 165; Purcell v. Shoe Co., 187 Mo. 276; Labatt on Master and Servant, sec. 590. (4) The delinquent coservant may have failed to use the instrumentalities furnished, and so created the abnormal danger which caused the injury. Labatt, Master and Servant, secs. 590, 593, and cases cited in footnotes; Guggenheim v. Flanigan, 62 N. J. L. 354, 42 Atl. 145; Kimmer v. Webber, 151 N. Y. 417, 45 N. E. 860; Lambert v. Pulp Co., 72 Vt. 278. (5) If Flisk was in any manner negligent, his act was that of a fellow-servant. Foley v. The Peninsular, 79 Fed. 972; Deehan v. The Bolivia, 59 Fed. 626; Kenny v. The Cunard, 52 N. Y. Sup. 434; Labatt, Master and Servant, sec. 594; Griffiths v. Gidlow, 3 Hurlst & N. 648; Ludlow v. Bridge Co., 42 N. Y. Supp. 343; McPhee v. Scully, 163 Mass. 216; Pierce v. Oliver, 18 Ind. App. 87; Collyer v. Railroad, 49 N. J. L. 59; Bagley v. Gas Co., 39 N. Y. Supp. 302; Frawley v. Sheldon, 20 R. I. 258; Snyder v. Mining Co., 2 Idaho 771; Railroad v. Becker, 38 Ill. App. 523; Tobin v. Friedman, 67 Ill. App. 149; Kraeft v. Mayer, 92 Wis. 252; Gaeghegan v. Atlas Co., 146 N. Y. 369; Quebec Co. v. Merchant, 133 U. S. 375; Sofield v. Smelting Co., 64 N. J. L. 605; Filbert v. Canal Co., 121 N. Y. 207; The Louisiana, 74 Fed. 748; Olson v. Coal Co., 104 Fed. 574.

*Walsh & Morrison* for respondent.

(1) The negligence of the defendant was the proximate cause of plaintiff's injury. Wendler v. Furnishing Co., 165 Mo. 541; Schultz v. Moon, 33 Mo. App. 340; Shore v. Bridge Co., 111 Mo. App. 287; Hallweg v. Telephone Co., 195 Mo. 149. (2) Defendant is liable for neglect of the duty it owed the plaintiff even though the negligence of a fellow-servant contributed to the injury. Cole v. Transit Co., 183 Mo. 94, cases cited.

BROADDUS, P. J.—This is a suit for damages as the alleged result of the negligence of defendant. The defendant owns and operates a meat-packing establishment in Kansas City. The plaintiff was in its employ as a common laborer at the time of his injury. At the time, he and another employee were engaged in removing barrels of meat from one part of the establishment to another. The barrels were on the second floor, from which they were being removed by means of an elevator to the first floor. The manner of doing the work was for one man to remove the barrels of meat, one at a time, from what is known as the cooler and, rolling them out of the door which was about sixteen feet from the elevator and leave them about six feet from the elevator. Three barrels made a load, to be put and carried on the elevator. A workman by the name of Flisk was loading the elevator and plaintiff was unloading it on the floor below. While plaintiff would be unloading the elevator, Flisk would be rolling out three barrels onto the floor, as stated, to have them in readiness to load when the elevator returned. There was a decline in the floor for a distance of six or eight feet from the door of the elevator. It was the aim and practice of Flisk to rest the barrels on the floor before they reached the decline in the floor. On the day of plaintiff's injury, after about three loads had been sent down and plaintiff was unloading, one of the barrels placed upon the floor rolled down the incline in the floor into the open door of the elevator and fell upon the plaintiff and severely injured him. Flisk was at a loss to account for the barrel leaving its position on the floor, as he was of the opinion that he had left it at the usual place and not on the incline. No one saw it start or what caused it to start. The door of the elevator was open at the time and the evidence is that it had been left open at all times, and that there were cleats used to keep it open. Neither Flisk nor plaintiff had the management of the elevator.

Flisk, who was a witness for plaintiff, stated that plaintiff had at times loaded the elevator on the second floor, but plaintiff stated that he had no remembrance of ever having done so and denied that he had. It seems that Flisk knew of the incline in the floor, but did not appreciate that it was dangerous. It was shown that Mr. Pickett, the overseer, was around when the work was in progress; also that different employees, otherwise engaged at work and handling heavy material, were passing and repassing between the place where the barrels were placed and the elevator. It further appeared that the barrel had been placed on the floor but a very short time before it commenced its descent toward the elevator.

The judgment was for plaintiff and defendant appealed. The defendant's position is that: "Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the injury, but show a state of affairs from which an inference could as reasonably be drawn that the accident was due to a cause or causes other than the negligent act of defendant, the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances, nor is defendant called upon to explain the cause of the accident or purge itself of the inference of negligence. The doctrine of *res ipso loquitur* does not apply in such cases." And such was literally the holding in McGrath v. St. Louis Transit Co., 197 Mo. 97; and the same rule was applied to the case of Cothron v. Packing Co., 98 Mo. App. 343. And it is also a well-established rule that "Proof of the existence of a defect in appliances, in itself, does not establish a right of recovery; it must further appear, not as the result of bare conjecture, that the defect was the proximate cause of the injury, and that the master was chargeable with knowledge of it." [Breen v. Cooperage Co., 50 Mo. App. 202.] And if the appliance is defective, the plaintiff

must do more, he must show that the defect was the direct and immediate cause of the injury.

Applying these rules to the facts in the case as made out by plaintiff, we must come to the unavoidable conclusion that the defect in the floor and the failure of defendant to guard the opening into the elevator, connected with the act of Flisk in placing the barrel that fell upon plaintiff, as the combined and direct cause of plaintiff's injury. That there was a defect in the floor and that the gate to the elevator was left open are undisputed. But the controversy arises as to the question of what caused the barrel to leave its place upon the floor and roll down into the elevator shaft. We think, viewing all the circumstances connected with the transaction, that there can be but one reasonable conclusion as to what caused the barrel to roll down the incline. In the first place, it must have been placed on the incline where it rested for a short time and was started by a slight motion of the floor caused by workmen, who were engaged at work upon it, and the force of gravitation carried it down the incline after it was started from its position. It is not a question of mere surmise. People passing over the floor and engaged in work thereon would cause some vibration of the floor. It is not reasonable to suppose that the barrel started by other means. It is possible, however, that it may have done so, but it will not do to indulge in mere supposition of what might have been the probable cause.

It was the duty of defendant to afford plaintiff a reasonably safe place in which to do his work. With an open elevator door, and an inclining floor leading thereto, upon which the barrels by the slightest mistake in the calculation of the workmen handling them might be insecurely placed, the place of the plaintiff while unloading on the floor below was rendered one of unsafety. What did occur might have been in the reasonable contemplation of any person of ordinary

care. Pickett, the overseer of defendant, who was present while the work was going on, ought by the exercise of ordinary care to have been familiar with the conditions and of their unsafety, and to have caused the door of the elevator shaft to be closed as he certainly must have known that it was open and a menace to the workman below. If this door had been closed, the injury would not have happened notwithstanding the defect in the floor. And it might also be said that, if there had been no incline in the floor, the plaintiff would not have been injured notwithstanding the elevator door was left open. And also that it might not have been caused by reason of either, or both, had not Flisk by mistake placed the barrel on the incline, which he must have done. And whether the mistake or carelessness of Flisk contributed to the result is immaterial, as his negligence, combined with that of defendant, renders the defendant liable for the result.

If the master is negligent, his negligence is not excused by the fact that the negligence of the fellow-servant of plaintiff contributed with that of the master to cause the injury. [Cole v. Transit Co., 183 Mo. 81.]

The case has been fully and ably briefed on both sides, but we deem what has been said is sufficient to express our views upon the main and controlling questions presented. We believe the cause was properly tried and that the judgment is for the right party. It is therefore affirmed. All concur.